Filed March 5, 1896.

---

No. 17,685.

## WRIGHT *v.* THE STATE.

APPELLATE PROCEDURE.—*Weight of Evidence.*—A conviction will not be reversed on appeal on the ground that it is against the weight of the evidence.

CRIMINAL LAW.—*Affidavit and Information.*—An information need not state that it was filed when the grand jury was not in session, nor that it had been discharged, under section 1802, R. S. 1894, providing that the information need not show the reasons for not prosecuting by indictment.

From the Kosciusko Circuit Court.

*H. R. Robbins*, for appellant.

*W. A. Ketcham*, Attorney-General, for State.

HACKNEY, C. J.—The appellant was charged by affidavit and information, tried and convicted of the crime of burglary.   The action of the circuit court in overruling a motion to quash the information and in overruling a motion for a new trial are the only causes of error assigned.

The affidavit and information were filed in the circuit court on the fourth day of the first term of that

court following the appellant's commitment upon a preliminary hearing. The only objection to the information, urged by counsel for the appellant, is that it does not appear to have been filed when the grand jury was not in session or had been discharged. It is supposed that this argument is designed to impress the court that the burden rested upon the appellee, in her charge, to affirmatively disclose the right to prosecute by information, as that right is given by section 1748, R. S. 1894 (1679, R. S. 1881). Unfortunately for this argument the statute, R. S. 1894, section 1802 (R. S. 1881, section 1733), provides that it shall not be necessary to disclose, in the information, the reasons for not prosecuting by indictment. A motion to quash did not, therefore, raise the question here urged. *Nichols* v. *State,* 127 Ind. 406; *State* v. *Drake,* 125 Ind. 367; *Keneger* v. *State,* 120 Ind. 176; Gillett's Crim. Law (2d. ed.), section 121.

The weight and sufficiency of the evidence are the only questions urged upon the motion for a new trial. The theory of the appellant, presented by his counsel, is that two neighbors of appellant's father desired to possess themselves of the father's farm and thereby rid themselves of a neighbor who was objectionable because "a poor man, somewhat uncultured and not at all stylish;" that these two neighbors and about fifty others formed an organization to aid these two neighbors in accomplishing their desire; that in pursuance of a conspiracy between these many neighbors, a detective was employed to induce this appellant to visit the bins of one of the neighbors and steal grain; that, being unable to induce the appellant to do so, they procured another to accompany the detective on the mission suggested, and twenty or more of them having stationed themselves about the neighbor's premises, they saw the detective and the "stool

pigeon" go through the form of stealing two bags of oats, and then saw them take flight, and that, in further advancement of this wicked conspiracy, the members of this organization came into court and falsely testified that the "stool pigeon" was this appellant. The further theory of the appellant is that the alleged burglary was with the consent of the owner of the property and was, therefore, no crime.

The first of these theories, involving so many people and such extensive perjury, to an end so unimportant, impressed us, while reading it, with the belief that there must be more than a grain of fiction in it. Upon reading carefully the more than three hunderd pages of evidence, we are convinced beyond a reasonable doubt that there is hardly a grain in this theory which is not fiction.

Nor is there more truth in the second theory. In the community where the appellant resided there was one of those lawful and often beneficial organizations for the detection of the thieves who plunder the farmers' barns, bins and henneries. It came to one of the members that the appellant had sought one Bolenbaugh to join him in a raid upon the granary of a neighbor named Anglin. This member induced Bolenbaugh to accept the proposal, that the appellant might be brought to justice. On the night when the theft was to be committed, a number of the members secreted themselves upon Anglin's premises, and toward "the witching hour of night" two forms appeared upon the premises in the bright and beautiful moonlight. These forms proceeded to the granary, broke the lock from its door, went in, filled two sacks with oats, placed the sacks upon their shoulders and started from the premises with them. When near the gateway some one of the watchers gave an alarming sound, then the sacks were dropped, the taller took

Wright *v.* The State.

flight down the lane and Bolenbaugh across the fence to permit the pursuers to have free chase down the lane. The tall form was fleeter than the pursuers and was soon lost in the paw-paw bushes. Twelve of those who were present on that night, without the slightest doubt, identified the appellant as the possessor of that taller form and those fleeter feet. He was found at his home and arrested at 3 o'clock that night. By some strange chance he had his clothes on when called and did not weary the callers with waiting. The absence of Mr. Anglin from his home on the night in question is the strongest circumstance in the case tending to support the claim that he aided and abetted the pillaging of his garnered harvests.

It is true that the defense offered evidence of an alibi and evidence that one Blue was in company with Bolenbaugh on the evening of the crime. Much of this evidence showed upon its face the marks of fabrication, many of the witnesses were hopelessly impeached, and all of them were stoutly contradicted.

It is thus shown that the question of the appellant's presence and participancy in the crime charged was not only a proper question for the jury, but that the question was, without a reasonable doubt, correctly decided. If it were a doubtful question, it must be well understood that this court has no power to pass upon that doubt, which would clearly depend upon the weight of the evidence.

Finding no error in the record, the judgment of the circuit court is affirmed.

Filed March 5, 1896.